**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TREVOR SLOAN, JOSEPH BLEIBERG, ARYEH LOUIS ROTHBERGER, KEVIN FARR, ELMER ORPILLA, and SAGAR DESAI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANKER INNOVATIONS LIMITED, FANTASIA TRADING LLC, and POWER MOBILE LIFE LLC,<br><br>Defendants. | Case No. 1:22-cv-7174<br><br>Honorable Sara L. Ellis |

**STIPULATED JOINT ESI DISCOVERY PROTOCOL**

**I.  PARTIES' AGREED-TO TERMS**

Pursuant to Federal Rule of Civil Procedure 26 and Principle 2.01 of the Seventh Circuit Electronic Discovery Pilot Program ("7th Cir. Pilot Program"), Plaintiffs Trevor Sloan, Joseph Bleiberg, Aryeh Louis Rothberger, Kevin Farr, Elmer Orpilla, and Sagar Desai (together, "Plaintiffs") and Defendants Anker Innovations Limited ("Anker"), Fantasia Trading LLC ("Fantasia"), and Power Mobile Life LLC ("PML," together with Anker and Fantasia, "Defendants"), by their respective counsel in the above-captioned action, stipulate and agree that the discovery of electronically stored information ("ESI") and hard copy documents in the Parties' possession, custody, or control shall be conducted in accordance with the following Stipulated Joint ESI Discovery Protocol ("ESI Protocol" or "Protocol").

1

A.     **GENERAL**

1.     The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Principles Relating to the Discovery of Electronically Stored Information (the "Principles") of the 7th Cir. Pilot Program.

2.     As used herein, "Requesting Party" means the party requesting production of documents. As used herein, "Producing Party" or "Responding Party" means the party that may be producing documents in response to the request of Requesting party. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Party.

3.     The confidentiality of Documents produced according to the requirements of this Protocol is governed by any confidentiality order entered by this Court in this Action and incorporated herein by reference. Nothing in this Protocol shall supersede the provisions of any subsequent confidentiality order.

4.     If a Party identifies a circumstance where application of this Protocol is not reasonably practicable or where this Protocol does not otherwise provide guidance or direction or for the method of production, the Party shall expeditiously inform all other Parties and meet and confer in good faith to address the issue(s). Nothing in this Protocol shall be deemed to prevent the Parties from agreeing to modify the terms of this Protocol with the notification and consent of all Parties.

5.     Nothing in this Protocol shall be interpreted to require disclosure of relevant information or data that is protected by the attorney-client privilege, common interest privilege, work-product doctrine, or is protected from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The Parties do not waive any objections to

the production, discoverability, or confidentiality of ESI, hard copy materials, data or any other discovery materials.

**B.     SEARCHING**

The Parties agree to meet and confer in good faith regarding search terms, applicable date ranges, sources of potentially relevant information, and custodians. That negotiation process will include the exchange of qualitative and quantitative information regarding the methodology, including production of search term hit reports for contended terms as appropriate. However, the Parties agree that nothing in this Agreement shall limit the producing Party's right to determine the best method to comply with its obligations under Rule 26, including but not limited to, the best manner(s) in which to search for, review, and produce potentially responsive information, provided that the methodology of their search for ESI is disclosed to the requesting party. Nor shall anything in this Agreement be deemed to abridge any Party's rights under the Federal Rules of Civil Procedure to seek judicial determination of a Party's obligations under Rule 26 or this protocol.

(a)     The Parties agree that the mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.

(b)     Use of a search protocol does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and responsive documents of which a party is aware. To the extent a party is aware of non-duplicative documents that are relevant, responsive, non-privileged, and reasonably accessible, such documents will be produced regardless of whether they contain search terms or some other search methodology agreed to by the parties or ordered by the Court.

(c) Discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the Parties' conferral.

1. <u>Inaccessible data</u>. The following types of data stores are presumed to be inaccessible and are not subject to preservation or discovery absent good cause and a particularized need for the data as established by the facts and legal issues of the case:

(a) Deleted, slack, fragmented, or other data only accessible by forensics.

(b) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

(c) On-line access data such as temporary internet files, history, cache, cookies, and the like.

(d) Back-up data that is substantially duplicative of data that are more accessible elsewhere.

(e) Data remaining from systems no longer in use that is unintelligible on the systems in use.

(f) Electronic data (e.g. email, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), so long as a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

(g) Files identified as zero (0) bytes in size.

C. **PRODUCTION FORMAT**

1. **Document format for ESI.**

   (a) <u>Default format</u>. The default production format for unstructured discoverable ESI shall be Bates-labeled single page/multi-page TIFF, as described in Section 1 of Exhibit 1.

   (b) <u>Native files</u>.

   (i) Excel (or other spreadsheet formats) will be produced in native format, unless they are redacted. If redacted, spreadsheet files can be produced as image files according to the specifications set forth herein. In the event that a specific redacted image file of a spreadsheet is not reasonably usable in image form, the receiving Party may request a redacted version of the native file by providing the specific Bates number(s) of the document. Such requests will not be unreasonably refused.

   (ii) Other documents without standard pagination, such as video or audio files, will be produced in native form.

   (iii) For natively produced documents, all productions shall contain placeholder TIFF images stating "Document Produced Natively."

   (c) <u>Structured data</u>. The parties shall meet and confer to discuss the production requirements of information from any databases that must be produced.

   (d) <u>Source code materials</u>. Should source code or sensitive technical information be identified for production, the Parties will meet and confer regarding the procedures for inspection of such materials.

2. **Document format for Hard Copy Documents**. Nothing herein shall relieve the Parties of any obligations they may have to search for responsive documents in hard copy form. The Parties shall produce documents that exist solely in physical hard-copy format following this ESI Protocol. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The following objective coding fields should be provided, if applicable: (1) beginning Bates number, (2) ending Bates number, (3) page count, and (4) custodian. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto skewing" and "auto-rotation" should be turned on during the OCR process. The Parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

3. **Color**. Documents containing color should be produced in color. The Parties reserve the right to object to producing documents in color on a case by case basis (*e.g.*, due to cost).

4. **Metadata format**. The Parties agree to produce the ESI metadata fields identified in Section 4 of Exhibit 1.

5. **Load file format**. The Parties agree on the load file specifications provided for in Section 3 of Exhibit 1.

6. **Redactions**. The Parties may use redactions to protect any information that is subject to the attorney-client privilege, the attorney work-product protection, or any other privilege, protection or confidently requirements. Any withheld attachments shall be slip-sheeted in the place where the attachment would normally be and designated as withheld.

  (a) Redacted document format. The parties will produce redacted documents in TIFF format with corresponding searchable OCR text (or in searchable PDF if production

format dictates) and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure.

7. **De-Duplication**. A Party is only required to produce a single copy of a responsive document.

(a) Global de-duplication. The Responding Party may use software to identify duplicate documents that are in files of individual or multiple production custodians. To the extent there are duplicate documents, the Responding Party need only produce a single copy of a responsive document, unless the Requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. No document that is the parent or an attachment of a produced document may otherwise be withheld as a duplicate. The ALLCUSTODIAN and ALLFILEPATH fields should list each custodian and file path, respectively, separated by a semicolon.

(b) System files. Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced. This provision is not intended to waive the Parties' right to seek production of specific files or file types that would otherwise be excluded by this provision.

(c) Email attachments. Attachments to e-mails shall not be eliminated from the parent e-mail.

(d) Parent-Child Relationships. Parent-child relationships (association between an attachment and its parent document) shall be preserved to the extent possible. The

attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Nothing in this paragraph shall require the Parties to undertake unduly burdensome efforts to preserve parent-child relationships within a document family for hard copy documents.

      (e)    <u>Paper documents</u>. Paper documents shall not be eliminated as duplicates of responsive ESI. A Producing Party will make best efforts to unitize documents collected as paper prior to scanning, but is not obligated to alter a pre-existing organizational structure or to re-scan any prior paper document scans. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields.

      (f)    Email Threading: Email threads are email communications that contain prior-in-time or lesser-included emails that also may exist separately in the party's electronic files. A most inclusive email thread is one that contains all the prior-in-time or lesser-included emails, including attachments and identical senders and recipients, for that branch of the email thread. The producing party may remove from production the wholly-included, prior-in-time, or lesser-included emails, provided that none of the earlier emails in the chain contained non-identical attachments, senders, or recipients, and the email chain

8

does not exclude any email conversations that split off from the primary thread. Following production of most inclusive email threads, a Receiving Party may make reasonable requests for metadata associated with individual prior-in-time or lesser-included emails within specifically identified most inclusive email threads. The Producing Party shall respond reasonably to such requests and produce the requested metadata within 14 calendar days.

8. **Time Zone**. When processing ESI, Coordinated Universal Time (UTC) should be selected as the time zone.

9. **Archive File Types**. Archive file types (e.g., .zip, .rar) shall be uncompressed for processing. Each file contained within an archive file shall be produced, and the reference to the parent archive file will be provided in the child file name. If the archive file is itself an attachment, that parent/child relationship shall also be preserved.

10. **Productions from Related Proceedings and Other Litigation.** In the event a Party intends to produce documents that have already been produced in a prior or related matter, the Producing Party shall produce those documents in a way that affixes or includes the same labeling, including Bates labeling, as the previously produced documents, unless otherwise agreed to by the Parties. The Parties also agree to meet and confer regarding other production format issues.

11. **Production Media**. The preferred means of producing documents is via secure FTP or secure file share. However, documents may also be produced via CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to the Producing Party's secure FTP or file share or (b) if the interest of preserving the confidentiality of the information produced outweighs the speed and efficiency of producing documents via secure FTP

9

or secure file share. To the extent possible, physical media should be write protected before it is produced.

12. **Foreign data privacy laws**. Nothing in this Protocol is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws. One or more of the Parties may have information located outside the United States that may be subject to foreign data protection laws or government/state secrecy laws, including but not limited to, the Law of the People's Republic of China on Guarding State Secrets (adopted in 1988, revised 2010), the Law of the People's Republic of China on Accounting Archives Management Measures law, the Anti-Unfair Competition Law of the People's Republic of China, the Personal Information Protection Law of the People's Republic of China, the Cybersecurity Law of the People's Republic of China, the Data Security Law of the People's Republic of China, and/or the General Data Protection Regulation (2016/679) of the European Union. To the extent that a party objects based on requirements of a foreign country's data privacy laws, such objections must be documented in the privilege log. Nothing in this section prevents a party from moving to compel the production of document regardless of the requirements of a foreign country's data privacy laws or should be read as preventing the Court from ordering the production of such documents.

D. **E-DISCOVERY LIAISON**

1. The Parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.

2. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.

3.    The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**E.    PRIVILEGE**

1.    Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

2.    The producing party shall provide a privilege log containing the categories, or fields, of information identified in Exhibit 2 hereto, to the extent available, unless otherwise agreed in writing or pursuant to a court order.

3.    Communications involving a party's counsel (including all attorneys, staff or other personnel) that post-date the filing of the complaint need not be placed on a privilege log.

[*signatures on following page*]

Dated June 27, 2023

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC** | **ORRICK, HERRINGTON & SUTCLIFFE LLP** |
| */s/ Trenton Ross Kashima* | */s/ Scott T. Sakiyama* |
| Trenton Ross Kashima<br>401 West Broadway, Suite 1760<br>San Diego, CA 92101<br>Tel: (619) 810-7047<br>tkashima@milberg.com | Scott T. Sakiyama<br>353 N. Clark St, Suite 3600<br>Chicago, IL 60654<br>Tel: (312) 924-9893<br>ssakiyama@orrick.com |
| Gary M. Klinger<br>227 W. Monroe Street, Suite 2100<br>Chicago, Illinois 60606<br>Tel: (866) 252-0878<br>gklinger@milberg.com | Yufeng (Ethan) Ma (Ill. Bar No. 6277936)<br>4703 Park Place<br>1601 Nanjing Road West<br>Shanghai, 200040<br>People's Republic of China<br>P: +86 21 6109 7108<br>yma@orrick.com |
| Nick Suciu, III<br>6905 Telegraph Road, Suite 115<br>Bloomfield Hills, MI 483021<br>(313) 303-3472<br>nsuciu@milberg.com | Aravind Swaminathan (*Pro Hac Vice*), Lead Trial Attorney<br>401 Union Street - Suite 3300<br>Seattle, WA 98101<br>P: (206) 839-4340<br>aswaminathan@orrick.com |
| **POMERANTZ LLP** | |
| Genc Arifi<br>Brian Calandra<br>Joshua B. Silverman<br>10 South Lasalle Street, Suite 3505<br>Chicago, IL 60603<br>Tel: (312) 377-1181<br>Fax: (312) 229-8811<br>garifi@pomlaw.com<br>bcalandra@pomlaw.com<br>jsilverman@pomlaw.com | Lauren Erker (*Pro Hac Vice*)<br>631 Wilshire Blvd., Suite 2-C<br>Santa Monica, CA 90401<br>P: (310) 424-3916<br>lerker@orrick.com<br><br>*Counsel for Defendants Anker Innovations Limited, Fantasia Trading LLC, and Power Mobile Life LLC* |

**RENNERT VOGEL MANDLER & RODRIGUEZ, P.A.**

Robert M. Stein
100 SE 2nd Street, 29th Floor
Miami, FL 33131
Tel: (305) 423-3437
rstein@rvmrlaw.com

Daniel S. Maland
100 SE 2nd Street, 29th Floor
Miami, FL 33131
Tel: (305) 423-3562
dmaland@rvmrlaw.com

**KOZYAK TROPIN & THROCKMORTON LLP**

Benjamin Widlanski
Robert J. Neary
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel: (305) 372-1800
bwidlanski@kttlaw.com
rn@kttlaw.com

**LEVI & KORSINSKY, LLP**

Mark S. Reich
Gary I. Ishimoto
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
mreich@zlk.com
gishimoto@zlk.com

*Counsel for Plaintiffs Trevor Sloan, Joseph Bleiberg, Aryeh Louis Rothberger, Kevin Farr, Elmer Orpilla, and Sagar Desai, on behalf of themselves and all others similarly situated*

## EXHIBIT 1

1. **IMAGES:**
   - Produce documents in Single Page Group IV TIFF files
   - Image Resolution at least 300 DPI
   - Black and white images for non-color documents
   - Color images for color documents
   - File Naming Convention: Match Bates Number
   - Insert Placeholder image for any withheld document indicating the reason for the withholding and files produced in Native form
   - Original document orientation shall be retained

2. **FULL TEXT EXTRACTION / OCR:**
   - Produce full extracted text for all file types of ESI (Redacted text will not be produced)
   - Production format: Single text file for each document, not one text file per page
   - File Naming Convention: Match Beg Bates Number

3. **LOAD FILE SPECIFICATIONS**
   - **Images Load File**: Opticon OPT file
   - **Metadata Load File**: Concordance DAT file with field header information added as the first line of the file. Export using Concordance default delimiters.
   - **Extracted TEXT:** Reference File Path to TEXT file in DAT file
   - **Native Files Produced:** Reference File Path to Native file in DAT file

4. **ESI PRODUCTION METADATA FIELDS**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**: Beginning Bates number of the first document in an attachment range
   - **EndAttach**: Ending Bates number of the last document in attachment range
   - **Attachment Withheld**: "Yes," for withheld attachments; otherwise, blank
   - **Attachment Count**: Number of attachments
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **All Custodians**: Names of all Custodians of the File(s) Produced – Last Name, First Name format
   - **All File Path:** Folder and folder path where the file resided in the normal course of business for all copies of documents, including de-duped copies
   - **Confidentiality:** Confidentiality designation branded on the document
   - **Page Count**: total number of single-page TIFF files
   - **Redacted**: "Yes," for redacted documents; otherwise, blank
   - **FileName**: Filename of the original digital file name, including for attachments
   - **FilePath**: Folder and folder path where the file resided in the normal course of business
   - **File Extension**: File extension of the original digital file

- **NativeLink**: Path and filename to produced Native file
- **EmailSubject**: Subject line extracted from an email message
- **Title**: Title field extracted from the metadata of a non-email document
- **Author**: Author field extracted from the metadata of a non-email document
- **Email From**: From field extracted from an email message
- **Email To**: To or Recipient field extracted from an email message
- **Email Cc**: CC or Carbon Copy field extracted from an email message
- **Email BCC**: BCC or Blind Carbon Copy field extracted from an email message
- **Email Importance**: "Yes," for emails flagged by author or recipient as important; otherwise, blank
- **DateSent**: Sent date of an email message (mm/dd/yyyy format)
- **DateCreated**: Date that a file was created (mm/dd/yyyy format)
- **DateModified**: Modification date(s) of a non-email document
- **Fingerprint**: MD5 or SHA-1 hash value generated by creating a binary stream of the file
- **ProdVolume**: Identifies production media deliverable
- **ExtractedText**: File path to Extracted Text/OCR File
- **Conversation ID**: Email thread created by email system, character string of numbers and letters created in initial email and added to for each reply or forward of the email.

6. **HARD COPY DOCUMENTS METADATA FIELDS:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**: Beginning Bates number of the first document in an attachment range
   - **EndAttach**: Ending Bates number of the last document in attachment range
   - **All Custodians**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **Redacted**: "Yes," for redacted documents; otherwise, blank
   - **ProdVolume**: Identifies production media deliverable
   - **PageCount**: Number of pages in document

**Exhibit 2**
**Privilege Log Fields**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| PrivLog # (generic number) | Generic field for tracking purposes (i.e. 1, 2, 3). |
| Begin Bates | Beginning Bates number of document. |
| End Bates | Ending Bates number of document. |
| Document Type | General type of record (i.e., Outlook, PDF, PowerPoint Presentation). |
| Family Relationship | Parent, Child, or Standalone. |
| Date | The date of the parent document (for emails, this is date sent; for non-emails, this is date last modified). |
| Author | Author or sender of document (for emails, this is the From field; for non-emails, this is the person who created the file). |
| Recipients | Derived from the To field. |
| Other Recipients | Derived from the CC and BCC fields. |
| Privilege Claimed | Type of privilege claimed (i.e., Attorney-Client or Attorney Client - Work Product, etc.). |
| Description | Description of Privilege Claim. |
| Treatment | How the document was treated with regards to production (i.e., Withheld, Redacted, Non-Responsive – Attachment,). |